EXHIBIT B

1 | FINKELSTEIN & KRINSK LLP
Jeffrey R. Krinsk, Esq. (SBN 109234)
2 | jrk@classactionlaw.com
John J. Nelson, Esq. (SBN 317598)
3 | jjn@classactionlaw.com
501 West Broadway, Suite 1260
4 | San Diego, California 92101
Telephone: (619) 238-1333
5 | Facsimile: (619) 238-5425
6 | Attorneys for Plaintiffs
and the putative classes
7

**RECEIVED**

JUN 19 2020

Filing Window

**FILED**
Superior Court of California
County of Los Angeles

JUN 19 2020

Sherri R. Carter, Executive Officer/Clerk of Court
By ___Tanya Herrera___ Deputy
Tanya Herrera

8 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9 | **COUNTY OF LOS ANGELES**

| | |
|---|---|
| JAIMIE POTTS individually and on behalf of all others similarly situated, | **Case No: 20STCV15638** |
| Plaintiffs, | **FIRST AMENDED CLASS ACTION COMPLAINT FOR:** |
| v. | 1.  VIOLATION OF CAL. CIV. CODE §§ 1750, *et seq.*; |
| | 2.  VIOLATION OF CAL. BUS. & PROF. CODE §§ 17500, *et seq.*; |
| NEUTROGENA CORPORATION., a Delaware corporation and DOES 1-50, Inclusive | 3.  VIOLATION OF CAL. BUS. & PROF. CODE §§ 17200, *et seq.*; |
| Defendants. | 4.  VIOLATION OF CAL. BUS. & PROF. CODE §§ 17200, *et seq.*; |
| | 5.  VIOLATION OF CAL. BUS. & PROF. CODE §§ 17200, *et seq.*; |
| | 6.  VIOLATION OF N.Y. GEN. BUS. LAW §§ 349, *et seq.*; |
| | 7.  VIOLATION OF N.J. REV. STAT. §§ 56:8-1, *et seq.*; |
| | 8.  VIOLATION OF FL. STAT. §§ 501.201, *et seq.*; |
| | 9.  NEGLIGENT OMISSION; AND |
| | 10.  UNJUST ENRICHMENT. |
| | **DEMAND FOR JURY TRIAL** |

26 | ///

27 | ///

28 |

FIRST AMENDED CLASS ACTION COMPLAINT

Case No. 20STCV15638

1

## COMPLAINT

Plaintiff Jaimie Potts, Kim Mileszko, Christina Luka, and Rebeca Gonzalez (collectively "Plaintiffs") on behalf of their individual selves and all others similarly situated, allege as follows:

### NATURE OF THE ACTION

1.     Defendant Neutrogena Corporation ("Defendant" or "Neutrogena" and collectively with Doe defendants, "Defendants") is a world-renowned cosmetic and skincare brand that promotes itself as the "#1 Dermatologist Recommended Skincare brand." Neutrogena sells a range of cosmetic, beauty, and skincare products, many of which Defendants advertise as ideal for sensitive skin. The brand prominently advertises and promotes its commitment to healthy skin and skin-safe products, assuring consumers that its products are safe and effective. Unfortunately for Plaintiffs and the putative classes, many of those claims are misleading and improperly create an impression in the minds of consumers that Neutrogena products are rigorously tested and approved for use on even the most sensitive skin.

2.     This is an action for damages and injunctive relief for harm suffered by Plaintiffs and putative class members as a direct and proximate result of Defendants' negligent, willful, and wrongful conduct in connection with the design, development, manufacture, testing, packaging, promotion, marketing, distribution, labeling, and/or sale of the makeup remover cleansing towelettes sold by Neutrogena, collectively referred to herein as "Cleansing Towelettes" or the "Class Products". The Class Products at issue in this action include, but are not limited to:

- Ultra-Soft Makeup Remover Wipes for Waterproof Makeup;
- Makeup Remover Cleansing Towelettes - Fragrance Free;
- Neutrogena Naturals Purifying Makeup Remover Cleansing Towelettes;
- Makeup Remover Cleansing Towelettes-Night Calming;
- Deep Clean Oil-Free Makeup Remover Cleansing Wipes;
- Deep Clean Purifying Micellar Cleansing Towelettes; and
- Makeup Remover Cleansing Towelettes-Hydrating.

3.     At all times relevant hereto, the Class Products were designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by the Neutrogena Corporation.

**JURISDICTION AND VENUE**

4.    This Court has jurisdiction over this action pursuant to Article 6, § 10 of the California Constitution, Civil Code § 1780(d), and Code of Civil Procedure §§ 382 and 410.10.

5.    This Court has jurisdiction over Defendant because it is headquartered in California and maintains its principal place of business at 5760 West 96th Street in Los Angeles, California 90045. Plaintiffs are informed and believe and thereon allege that the misrepresentations, omissions, and concealments that are the subject of this Complaint were devised of and emanated from Defendants California headquarters. Defendants have conducted and continue to conduct substantial business within California, including, inter alia, the development, promotion, advertising, distribution, and sale of Neutrogena Cleansing Towelettes.

6.    Venue is proper in this Court pursuant to Code of Civil Procedure § 395 because Defendant is headquartered in Los Angeles and its representations, omissions, and concealments were disseminated from California, Plaintiff Potts purchased Defendants' Product(s) in Los Angeles County, and the damage and injury occurred in Los Angeles County.

7.    Defendant's Class Products are sold at hundreds of local and national retailers, including, but not limited to Costco, Walmart, Rite-Aid, Target, and CVS, throughout the State of California and nationwide. Defendants advertise and promote the Class Products within and throughout the State of California and nationwide. Defendants' promotional representations regarding the Class Products are incomplete, false, and misleading and the resulting economic harms are not reasonably avoided by consumers in California, New Jersey, New York, Florida, or nationwide.

**PARTIES**

8.    Plaintiffs and putative class and subclass members' claims arise out of Defendants' production, design, marketing, and sale of Neutrogena Cleansing Towelette Products in the states of California, New Jersey, New York, Florida, and nationwide. Defendants derive substantial revenue from goods used or consumed in the State of California, those other states, and nationwide.

///

9.      Defendant Neutrogena Corporation is a subsidiary of Johnson and Johnson with its principle place of business at 5760 West 96th Street in Los Angeles, California 90045. At all times relevant hereto, Defendants, including Neutrogena Corporation, were engaged in the business of designing, developing, manufacturing, producing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling the Class Products.

10.      At all relevant times, Defendant Neutrogena Corporation was present and doing business within the State of California and sold its products throughout California and in each state of the United States. Defendant Neutrogena Corporation expected, knew, or should have been aware that its conduct would have adverse consequences within the State of California and in each state where it sold its products.

11.      Plaintiffs do not know the true names of Doe defendants 1 through 50 inclusive (collectively with Neutrogena, "Defendants") and therefore sues them by those fictitious names. Plaintiffs are informed and believe, and on the basis of that information and belief, allege, that each of the doe defendants are in some manner proximately responsible for the events and happenings alleged in this complaint and for Plaintiffs' injuries, damages, restitution and equitable remedies prayed for herein.

12.      Plaintiff Jaimie Potts is, and at all times relevant hereto was, a resident of Los Angeles County and a citizen of California. Throughout and within the Class Period, Ms. Potts purchased a variety of Cleansing Towelette products at her local Costco store and her venue declaration is attached here to as Exhibit A, as though fully incorporated herein. Ms. Potts purchased the Class Products for her daughter after viewing the Class Product labels. Ms. Potts concluded that the Class Products, based on the representations of the labels, would be safe and suitable for her family. After using the Cleansing Towelettes in a manner consistent with Defendant's directions, Ms. Pott's daughter soon began to develop a rash, peeling skin and even burning. Initially, neither Plaintiff nor

FIRST AMENDED CLASS ACTION COMPLAINT

4

48

Case No. 20STCV15638

Plaintiff's daughter realized that the skin damage and irritation resulted from the Cleansing Towelettes because neither the Class Product labels nor any of Defendant's publicly disseminated representations indicated that the Class Products were anything but safe for all skin types. In fact, Defendant even disavowed, through its website and other means, that the Class Products would cause such adverse skin reactions. Ms. Potts relied on the Class Product labels when determining what skincare products she should purchase for her family. Those representations contained no warning about known or anticipated adverse skin reactions, no recommendation to conduct a preliminary skin test, and, to the contrary, contained representations that led Plaintiff to believe that the Class Products were safe for all skin types, including particularly sensitive skin.

13.     Plaintiff Kim Mileszko is and, at all times relevant hereto, was a resident of the county of Burlington and the state of New Jersey. Plaintiff Mileszko purchased the Class Products for her daughter as a stocking stuffer for Christmas 2017 after viewing the Class Product labels. Ms. Mileszko relied on the representations contained on the labels and concluded that the Class Products would be safe and suitable for her family. Ms. Mileszko's daughter used the wipes as directed by the product label but began to develop dry skin around the areas she applied the wipes. Unaware that the Class Products were causing her skin issues, she continued to use the wipes between Christmas 2017 and mid-February 2018. During this time, the dry areas of her skin developed into visibly raised bumps which in turn lead to burning and discomfort in the afflicted areas. Ultimately, Ms. Mileszko's daughter's skin began to harden and peel, much like a chemical burn. The adversely affected areas began to radiate from the areas where she applied the wipes and spread to her scalp and back area. It was in mid-February 2018, after Plaintiff Mileszko took her daughter to a pediatrician due to the persistent skin issues that her daughter ceased use of the products entirely. Despite this, her skin issues persisted for a period of months without abatement. Ultimately, some six months after

1  completely ceasing use of the product, Ms. Mileszko's daughter's skin began to return to the

2  condition it was in before using the Class Products.

3       14.     Plaintiff Christina Luka is and, at all times relevant hereto, was a resident of the Erie

4  County and the state of New York. Ms. Luka, a contact lens wearer, purchased the Ultra Soft variety

5  of the Class Products at her local Target in approximately January of 2020. Prior to purchasing the

6  Class Product she examined the labels and those of similar products. Ultimately, after reading the

7  phrase, "Gentle enough to use around sensitive eye area, even for contact lens wearers," and other

8  representations thereon, Ms. Luka concluded that the wipes were appropriate for her needs and

9  purchased them. Ms. Luka used the Class Product sporadically without issue for several weeks. One

10  evening, Ms. Luka applied the product to the areas around her eyes and cheeks to remove her

11  makeup. Ms. Luka followed the directions on the label and did not rinse the product before going to

12  bed for the evening. When Ms. Luka awoke the following morning, she discovered that the area

13

14  around her eyes was inflamed and itchy and she felt a strong burning sensation in the areas where

15  she had removed her makeup. The areas around her eyes, where she had removed her mascara, were

16

17  swollen, red, and burning. In fact, the areas around her eyes were so swollen and painful that she was

18  unable to even put in her contacts that morning. Ms. Luka, not suspecting that makeup removing

19  wipes could cause such a reaction suspected she may have pinkeye or some other eye infection. The

20  swelling was so bad that her coworkers urged her to see a doctor when she arrived at work. Over

21

22  several days, the irritation and swelling diminished. Weeks later, still unaware that the Cleansing

23  Towelettes were causing her skin issues, Ms. Luka used the product again and again suffered from

24  burning, swelling, and irritation in the areas she had applied the wipes. After this second incident,

25  Ms. Luka ceased using the Cleansing Towelettes and, since then, has not suffered any adverse skin

26  reaction.

27

28

15.     Plaintiff Rebeca Gonzalez is and, at all times relevant hereto, was a resident of Broward County and the state of Florida. Ms. Gonzalez purchased the Cleansing Towelettes at her local Costco for her personal use within the class period. Before purchasing the Cleansing Towelettes Ms. Gonzalez evaluated similar products but, upon viewing the representations on the Class Product labels, she concluded that the Class Products were best suited for her sensitive skin. Ms. Gonzalez used the Cleansing Towelettes as directed by the product's label and, the next morning, she awoke and immediately felt itchiness and burning. When she examined the areas where she applied the Cleansing Towelettes, she noticed that those areas of her skin were red and inflamed, as if she had developed a rash. Ms. Gonzalez was unsure as to whether the wipes were responsible and waited some time before using them again. When she did use the wipes again, she noticed the itchiness, burning, and redness returned. Ms. Gonzalez stopped using he wipes and gave them to her daughter to use. However, like Ms. Gonzalez, Ms. Gonzalez's daughter suffered from the same reaction and, concluding the wipes were responsible, she stopped using them and neither woman has experienced the adverse skin condition since.

16.     Each plaintiff would consider purchasing the Class Products in the future if they could be made to conform with the affirmative representations on the Class Product labels and in Defendants' marketing. Plaintiffs would consider purchasing the Class Products for others if, Class Product chemical composition unchanged, the labels and marketing representations warned that the Class Products were not suitable for all skin types, a pre-use patch test was recommended, and consumers were advised to cease use and consult a physician if the experienced adverse skin conditions after using the Class Products.

17.     Plaintiffs are informed and believe, and allege thereon, that Defendants, and each of them, are proximately responsible for the events, occurrences and omissions alleged in this complaint as they pertain to Plaintiffs and the putative Class members' injuries.

1

**FACTUAL ALLEGATIONS**

2      18.   Neutrogena Cleansing Towelettes are a cosmetic makeup removing product intended

3 to act as a gentle cleanser that does not irritate the skin but quickly and effortlessly removes makeup

4 from the face and eyes. Neutrogena advertises on each Cleansing Towelette product label that the

5 wipes are "Ophthalmologist tested," "Dermatologist tested," and "Allergy tested," creating the

6 impression in the minds of consumers that the Class Products are ophthalmologist and dermatologist

7 approved, without qualification, and allergen free. Further still, in large bolded letters, Neutrogena

8 proclaims that the Cleansing Towelettes are, "Gentle enough to use around sensitive eye area, even

9 for contact lens wearers."

10      19.   The Class Product labels include a set of instructions that read as follows:

11

> **Directions:** Gently wipe face with towelette, removing dirt and all
> traces of face and eye makeup. There is no need to rinse. Dispose of
> the towelette in trash receptacle (do not flush). After removing
> towelette, reseal refill pack. If stored in vanity case, secure lid.

12

13

14



15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED CLASS ACTION COMPLAINT             Case No. 20STCV15638

8

20.     A reasonable consumer, upon reading the Class Product labels, would conclude that the Class Products are as benign as water. Neutrogena affirms as much when it instructs the user that the Class Products, "Gently and effectively dissolve[] all traces of dirt..," Leave[] skin thoroughly clean with no heavy residue, so there's no need to rinse," and that they are "Gentle enough to use around sensitive eye areas, even for contact lens wearers."

21.     While using the Cleansing Towelettes as directed many consumers have experienced adverse reactions ranging from irritation and discomfort to peeling, burning, and temporary or permanent facial scarring. Despite receiving a significant number of reports from consumers regarding the propensity of the Cleansing Towelettes to injure consumers, Defendants not only fail to warn consumers of potential adverse reactions, they assure them the product is safe for even the most sensitive skin.

22.     Neutrogena, a world renowned and recognized cosmetic brand that promotes itself as "the #1 Dermatologist Recommended skincare brand," knew (or were negligent in not knowing) that using Neutrogena Cleansing Towelette Products created a significant risk of harm, including persistent injury as described above. Defendants failed to disclose material information to consumers (including Plaintiff and putative Nationwide Class and state Subclass members), that revealed a significant risk of injury and/or adverse reactions by using Defendants' products.

23.     Defendants were aware, knew, and were noticed that the Cleansing Towelettes created a substantial risk of skin irritation, rashes, burns, scarring, allergic reactions, disfigurement, and other injuries. Despite Defendants' awareness of the risk of injury to consumers who use the product as directed, there is no warning that some users may experience adverse reactions after using the Class Products. Defendants do not instruct consumers to test a small amount of the product on their skin before applying it to the face to assess the Class Product's suitability for their skin. Defendants do not even admonish consumers to cease use of the product if they experience irritation, discomfort, burning peeling, or other harm or injury.

24.     In omitting and/or concealing known material information and inadequately providing safety information pertaining to the Class Products, Defendants intended to induce

FIRST AMENDED CLASS ACTION COMPLAINT

Case No. 20STCV15638

9

1    consumers to rely on incomplete information when deciding whether to purchase and use the Class

2    Products. By so doing, Defendants engaged in conduct likely to mislead a reasonable consumer,

3    including Plaintiff and putative Class members. As a consequence, Plaintiffs and the putative classes

4    were unable to reasonably avoid the harm resulting from Defendants' omissions and

5    misrepresentations.

6         25.    Defendants not only knew of reports that consumers were experiencing adverse

7    reactions when using the Cleansing Towelettes as directed, they also interacted with adversely

8    affected consumers and sought to elicit further information from complainants regarding their

9    experience with the Class Products.

10        26.    Neutrogena's own website contains a litany of consumer complaints regarding skin

11   irritation, rashes, chemical burns, peeling, facial disfigurement, and other injuries from using the

12   Cleansing Towelettes. Neutrogena is clearly aware of these complaints as they respond to each

13   negative review with a request for further information. These consumer complaints and responses

14   from Neutrogena date back at least three years.

15

16

17

18

19   

20

21

22

23

24        27.    Despite Neutrogena's awareness of the issue, neither the Class Product labels nor the

25   Cleansing Towelette webpage has been modified to warn consumers of the potential consequences

26   of using the Products. In fact, the Class Product labels, dating from as far back as 2014 or earlier,

27   lack any warning or caution regarding potential adverse skin reactions. Since debuting the Class

28

FIRST AMENDED CLASS ACTION COMPLAINT                    Case No. 20STCV15638

1    Products, Defendants have made no effort to conform the labeling to the known qualities and risks

2    associated with use of the Class Products. Defendants' failure to affix a warning statement to the

3    Class Product labels is a violation of 21 CFR § 704.1.

4       28.    Defendants knew or should have known that the chemicals and/or chemical

5    formulation in the Cleansing Towelettes was causing serious and harmful consequences to many

6    consumers and, at a minimum, disclosed this potential harm to consumers to allow them to make a

7    reasonably informed decision as to whether to assume the risk of using the product. Indeed, 21 Code

8    of Federal Regulations § 740.1 requires Defendants to affix to product labels, "a warning statement

9    whenever necessary or appropriate to prevent a health hazard that may be associated with the product.

10   Instead, Defendants chose to pursue sales over safety and abrogated their duty to relay material

11   information to its customers to maximize sales of the Class Products without regard to consumer

12   safety.

13      29.    In fact, Neutrogena recognizes that consumers are entitled to the information necessary

14   to allow them to make informed decisions. Neutrogena proclaims on its website, "We want you to

15   feel good about how we make Neutrogena products. You can only do that if you have the facts."[1]

16   Curiously, Neutrogena omits essential facts regarding the potential for its Cleansing Towelettes to

17   irritate, disfigure, injure, or otherwise harm the skin of its customers.

18      30.    The labels of Neutrogena Makeup Remover Cleansing Towelettes promote the

19   product to consumers as being gentle on the skin and that they can be used on the bodies' most

20   sensitive areas, even the areas around the eyes. Under the directions section of the back label,

21   Defendant even assures consumers that the product need not even be rinsed from their face after use,

22   further entrenching in users the impression that the Cleansing Towelettes will not harm the skin.

23      31.    A reasonable consumer who was exposed to the Class Product labels would conclude

24   that the Class Products can be applied to the skin without consequence. After all, the label assures

25   purchasers that the contents have been tested by dermatologists and ophthalmologists, specialists in

26   their respective fields, and are allergen free. Because the package repeatedly assures consumers that

27

28       [1] https://www.neutrogena.com/producttesting.html

1  the Class Products are gentle and safe, and contains no warning to the contrary, a reasonable

2  consumer would infer that there is no possibility of adverse consequences associated with using the

3  Cleansing Towelettes.

4      32.    Neutrogena doesn't just allow consumers to infer that the products are safe, it

5  expressly warrants as much. Under the Skin Care tab of the Neutrogena website, visitors can visit a

6  section titled "Sensitive Skin Concern" The first thing consumers see on that page assures consumers

7  that the featured products are "Gentle yet effective cleansers, moisturizers and treatments that won't

8  irritate skin." Three products are highlighted next to the statement, one of which is the Neutrogena

9  Fragrance Free Makeup Remover Cleansing Towelettes.[2]

10



11  Sensitive Skin

12  Solutions

13  Gentle yet effective cleansers, moisturizers and treatments that won't irritate skin

14      33.    Such representations by Neutrogena directly conflict with their knowledge of the

15  Class Products propensity to irritate and damage some skin types.

16      34.    Defendants know that some population of consumers are harmed by using the Class

17  Products as directed. Further still, the harm that arises from use of the Cleansing Towelettes is not

18  one that would be reasonably anticipated by consumers. Not only do the Class Product labels assure

19  consumers that the product is safe for sensitive skin but rashes, chemical burns, peeling, and similar

20  injuries are not typically associated with the use of over-the-counter makeup remover and it is

21  certainly not associated with the "#1 Dermatologist Recommended skincare brand" Class Products

22  that Neutrogena assures are "Ophthalmologist tested, "Dermatologist tested," and "Allergy tested."

23      35.    The statement "Allergy tested," absent qualification, suggests to a reasonable

24  consumer that the product was tested for allergens and found to be free of them. These statements,

25  read objectively, reinforce the perception that the product is universally safe, and that the consumer

26  need anticipate no risk. While the claim that the products are "Dermatologist tested" and "Allergy

27

28      [2] https://www.neutrogena.com/skin/skin-sensitive

FIRST AMENDED CLASS ACTION COMPLAINT                 Case No. 20STCV15638

12

56

1    tested" may literally be true, because Defendants do not include the results from such testing, a

2    reasonable consumer would infer that the product was tested and found to be safe and without any

3    potential for adverse consequences.

4         36.    Defendants did have the foresight to include a warning on packages of the Cleansing

5    Towelettes but that warning simply directs the user not to flush the wipes. The packaging contains

6    no warning about possible skin irritation or injury and the positive representations included on the

7    package are not qualified in any way.

8         37.    Defendants have the information necessary to conclude that a substantial number of

9    users will be harmed by using the Class Products as directed but includes neither a warning that the

10   Cleansing Towelettes will adversely affect some people nor does it caution users to test a small

11   amount of the product on their skin before applying the wipes to their face and sensitive eye areas.

12        38.    Defendants convey no restrictions concerning cumulative or repeated use of their

13   products and the potential for sensitization or cross-sensitization. Some consumers have reported

14   using the Cleansing Towelettes for prolonged periods without issue before they suddenly began to

15   suffer from irritated skin, discomfort, peeling, burning, and other associated harm. Accordingly, if

16   the Cleansing Towelettes have a tendency to sensitize the skin with repeated use, it follows that

17   Neutrogena has a duty to warn consumers of the potential for sensitization and consequential injury.

18        39.    Defendants knew or should have known that the Class Product labels were inadequate

19   and incomplete and would foster misleading inferences in the minds of consumers.

20        40.    Defendants failed to properly, suitably, or effectively warn consumers, on the Class

21   Product labels, inserts, marketing materials, or otherwise, that the use of Cleansing Towelettes can

22   cause skin irritation, burning, peeling, disfigurement and other harms and associated injuries. Further

23   still, Defendants represented that the Class Products were safe and effective when used as directed

24   when they were not.

25        41.    Defendants independently knew, or should have known, that a significant percentage

26   of consumers will have a harmful reaction to their products but they failed to advise consumers on a

27

28

FIRST AMENDED CLASS ACTION COMPLAINT                          Case No. 20STCV15638

13

1   factual basis or to advise them directly to undergo a proper preliminary skin test, or any test, to

2   determine the suitability of the product before application of the Cleansing Towelettes.

3        42.    Contrary to Neutrogena's representations, the Cleansing Towelette products cause an

4   unacceptable and unreasonable rate of adverse reactions amongst the general population. Defendants

5   knew or should have known that consumers were at a great risk of suffering adverse reactions when

6   using Neutrogena's Cleansing Towelettes compared to other comparable products.

7        43.    Defendants have a duty to monitor and maintain the safety of their products and it is

8   reasonable for them to conduct clinical trials and/or studies to ascertain the safety of the Class

9   Products upon receipt of information suggesting that some people were being harmed. Whether they

10   did so or not is immaterial if Defendants obscured the results to induce consumers to rely on impartial

11   or outright false information.

12        44.    Because Defendants omit material information regarding the propensity of the

13   Cleansing Towelettes to harm the skin of some users, and because they reinforce the consumers

14   perception that the product is universally safe, a reasonable consumer could not have avoided the

15   harm associated with use of the Class Products. Consumers who purchased the Class Products

16   without knowledge of the true qualities and characteristics of the Class Products were denied the

17   right to make informed choices about what they purchase and what they put on their skin. As a result,

18   all consumers suffered an economic injury and some consumers suffered actual physical harm.

19   **CLASS ACTION ALLEGATIONS**

20        45.    Plaintiffs bring this action on their own behalves and, pursuant to California Code of

21   Civil Procedure § 378, on behalf of the following classes: (collectively "the Nationwide Class and

22   state Subclasses"):

23        **The Nationwide Class:** All persons nationwide who purchased a Neutrogena Cleansing

24        Towelette Product for personal use within the applicable statute of limitations. Excluded from

25        the Class are Defendants and its affiliates, parents, subsidiaries, employees, officers, agents, and

26        directors. Also excluded is any trial judge who may preside over this cause.

27

28

**The California Subclass:** All persons within California who purchased a Neutrogena Cleansing Towelette product for personal use within the applicable statute of limitations. Excluded from the Class are Defendants and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded is any trial judge who may preside over this cause.

**The New Jersey Subclass:** All persons within New Jersey who purchased a Neutrogena Cleansing Towelette product for personal use within the applicable statute of limitations. Excluded from the Class are Defendants and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded is any trial judge who may preside over this cause.

**The New York Subclass:** All persons within New York who purchased a Neutrogena Cleansing Towelette product for personal use within the applicable statute of limitations. Excluded from the Class are Defendants and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded is any trial judge who may preside over this cause.

**The Florida Subclass:** All persons within Florida who purchased a Neutrogena Cleansing Towelette product for personal use within the applicable statute of limitations. Excluded from the Class are Defendants and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded is any trial judge who may preside over this cause.

46.     The members of the classes are so numerous that joinder of all prospective Members is impracticable. On information and belief, thousands, perhaps millions, of consumers have purchased Neutrogena Cleansing Towelette products. As such, the proper disposition of many claims of the proposed classes in a class action will provide substantial benefits to the parties and the Court.

47.     The rights of each member of the proposed classes were violated in a similar manner based on Defendants' consistent wrongful and deceitful actions.

48.     The following questions of law and fact are common to each proposed class member and predominate over questions that may affect individual class members:

a. Whether Defendants engaged in marketing and promotional activities which were likely to deceive consumers by omitting, suppressing, and/or concealing the true efficacy and safety of the Class Products;

b. Whether Defendants omitted, suppressed, and/or concealed material facts concerning the Class Products from consumers;

c. What the fair market value of the Class Products is at times within the class period but for Defendants' (their employees', agents', apparent agents', independent contractors', sales representatives') omissions, suppression, and/or concealments concerning the true efficacy and safety of the Class Products;

d. Whether the retail cost of the Class Products was inflated within the class period by Defendants' omissions, suppressions, and/or the concealment of material information;

e. Whether Plaintiff and the members of the Nationwide Class and state Subclasses were deprived of the benefit of the bargain upon purchasing the Class Products;

f. Whether Defendants' conduct was unconscionable, deceptive, and deceitful;

g. Whether Defendants' omissions of related facts, suppressions of related truths, and/or concealments of the safety hazards of the Class Products allowed Defendants to unjustly earn money from sales tainted with deceit;

h. Whether Defendants' conduct violates the California Consumer Legal Remedies Act ("CLRA") (Cal. Civ. Code §§ 1750, *et seq.*) through their course of unfair and/or deceptive conduct as alleged herein;

i. Whether Defendants' conduct violates the False Advertising Law ("FAL") (Cal. Bus. & Prof. Code §§ 17500, *et seq.*) through their course of unfair and/or deceptive conduct as alleged herein;

j. Whether the conduct and/or activities of Defendants allowed for an inflated price of the Class Products and constituted unfair acts or practices in violation of the California Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code §§ 17200, *et seq.*);

k. Whether Defendants' conduct violates the New Jersey Consumer Fraud Act (N.J. Stat. Ann. §§ 56:8-1, *et seq.*) through their course of unfair and/or deceptive conduct as alleged herein;

l. Whether Defendants' conduct violates the New York General Business Law (N.Y. Gen. Bus. Law §§ 349, *et seq.*) through their course of unfair and/or deceptive conduct as alleged herein;

m. Whether Defendants' conduct violates the Florida Deceptive and Unfair Trade Practices Act (Fl. Stat. § 501.201, et seq.) through their course of unfair and/or deceptive conduct as alleged herein;

n. Whether Defendants were unjustly enriched at the expense of the Class members;

o. Whether Lead Plaintiffs and Class Counsel should be awarded expenses, attorneys' fees and costs for Defendants' violation of, *inter alia*, the FAL, UCL, CLRA, CFA, N.Y. Gen. Bus. Law and the FDUTPAt;

p.  The extent of damages suffered by the classes; and

q.  Whether Plaintiffs and the putative classes are entitled to injunctive relief regarding Defendant's labeling and promotional activities.

49.     Plaintiffs' claims are typical of the claims of all members of their respective putative classes. If brought individually, the claims of each putative class and subclass member would require proof of the same material and substantive facts and would seek essentially the same remedies.

50.     Plaintiffs are willing, qualified, and prepared to serve as the class representatives for their respective classes. Plaintiffs will fairly and adequately protect the interest of the Nationwide Class and state Subclasses and have no interests adverse to, or which directly and irrevocably conflict with, the interests of other members of the putative Nationwide Class and state Subclasses. Further, Plaintiffs have retained counsel experienced in prosecuting complex class action litigation.

51.     Defendants have acted or refused to act on grounds generally applicable to all members of the putative the Nationwide Class and state Subclasses.

52.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual claims by the Nationwide Class and state Subclass members are impractical because the costs of case prosecution will exceed what a putative class member has at stake.

53.     Members of the putative Nationwide Class and state Subclasses are readily ascertainable through Defendants' records and files possessed at other places.

54.     Prosecuting separate actions by individual putative Nationwide Class and state Subclass members would create a risk of inconsistent or varying adjudications that would establish inharmonious standards of conduct for Defendants.

## FIRST CAUSE OF ACTION
### VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT
### (CAL. CIV. CODE §§ 1750, *et seq.*)

55.     Plaintiffs restate and reallege, and incorporate herein by reference, the preceding paragraphs as if fully set forth herein and further alleges as follows:

56.     Plaintiff Potts brings this cause of action on behalf of herself and all similarly situated residents of the state of California for violations of California's Consumer Legal Remedies Act

1    ("CLRA"), which prohibits misrepresentations in commerce and unfair or deceptive business

2    practices.

3         57.    The Class Products are "goods" as defined by California Civil Code § 1761(a).

4         58.    Defendants are "persons" as defined by California Civil Code section 1761(c).

5         59.    Plaintiff Potts and Class members are "consumers" within the meaning of California

6    Civil Code § 1761(d) because they purchased the Class Products for personal, family, or household

7    use.

8         60.    The sale of the Class Products to Plaintiff and the putative Class members is a

9    "transaction" as defined by California Civil Code § 1761(e).

10        61.    Defendants' acts and practices, which were intended to result, and which did result,

11   in the sale of the Class Products, violate the Consumer Legal Remedies Act for at least the following

12   reasons:

13              a.  Defendants represented that the Cleansing Towelettes have characteristics, uses or

14                  benefits which they do not have;

15              b.  Defendants advertised their goods with intent to not sell them as advertised;

16              c.  Defendants represented that their products are of a particular standard, quality, or

17                  grade when they are not; and

18              d.  Defendants represented that their goods have been supplied in accordance with a

19                  previous representation when they have not.

20        62.    As described above, Defendants knew that the Class Products have a propensity to

21   cause severe, unanticipated, and harmful reactions when applied as directed, but concealed and failed

22   to adequately disclose this fact to consumers at the point of sale, on the product label, through

23   promotional efforts, or otherwise. Defendants intended that Plaintiff Potts and the members of the

24   proposed Class rely on the omission of these material facts in deciding to purchase the Cleansing

25   Towelettes.

26   ///

27   ///

28

FIRST AMENDED CLASS ACTION COMPLAINT                                    Case No. 20STCV15638

63. By deceptively omitting material information regarding the propensity of the Class Products to cause sudden and severe reactions to consumers' skin, Defendants violated California Civil Code sections 1770(a)(5), (7), (9), and (16).

64. In failing to disclose the nonconformity of the Class Products to their labels and/or propensity of the Class Products to harm, Defendants have knowingly and intentionally concealed material facts and breached their duty not to do so.

65. The facts concealed or not disclosed by Defendants to Plaintiff Potts and the Class are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Defendants' products rather than that of a competitor, or pay a lesser price for the products.

66. Defendants made unambiguous representations as to the safety of the Products while suppressing some material facts regarding the severity and frequency of the skin reactions caused by the Class Products.

67. Plaintiff Potts and the Class members were harmed and suffered actual damages as a result of Defendants' unfair competition and deceptive acts and practices. Had Defendants disclosed the true nature and/or danger inherent in its products, Plaintiff Potts and members of the Class would not have been misled into purchasing Defendants' products or would have paid significantly less for them.

68. Plaintiff Potts, on behalf of herself and all other similarly situated California consumers, and as appropriate, on behalf of the general public of the State of California, seeks injunctive relief prohibiting Defendants continuing these unlawful practices pursuant to California Civil Code § 1782(a)(2).

69. Plaintiff Potts provided Defendants with notice of its alleged violations of the CLRA pursuant to California Civil Code § 1782(a) via certified mail, demanding that Defendants correct such violations. Should Defendants fail to adequately respond to Plaintiff's notice within 30 days, Plaintiff will amend this complaint and seek all available damages under the CLRA for all violations complained of herein, including, but not limited to, statutory damages, punitive damages, attorney's

1    fees and costs and any other relief that the Court deems proper.

2

3

**SECOND CAUSE OF ACTION**
**VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW**
**(CAL. BUS. & PRO. CODE §§ 17500, *et seq.*)**

4       70.    Plaintiffs restate and reallege, and incorporate herein by reference, the preceding

5    paragraphs as if fully set forth herein and further alleges as follows:

6       71.    Plaintiffs bring this cause of action on behalf of themselves and all similarly situated

7    consumers of the Nationwide Class, the California Subclass, the New Jersey Subclass, the Florida

8    Subclass for violations of California's False Advertising Law ("FAL").

9       72.    California's FAL prohibits any statement in connection with the sale of goods "which

10    is untrue or misleading." Cal. Bus. & Prof. Code §17500.

11       73.    The FAL further prohibits disseminating within or from California, or any state, any

12    statement which is untrue, or misleading, and which the disseminator knows, or should know, to be

13    untrue or misleading, in connection with commercial advertisements.

14       74.    As set forth herein, Defendants' claims regarding the safety and efficacy of the Class

15    Products, including but not limited to claims that they are "[g]entle enough to use around sensitive

16    eye areas, even for contact lens wearers," they "won't irritate skin," "[g]ently and effectively

17    dissolves all traces of dirt," and "[t]here is no need to rinse" are literally false and likely to deceive

18    the public. Absent qualification, these claims are false and misleading because the Class Products do

19    harm a significant number of users and the representations as to the safety and gentleness of the

20    product are contrary to the known hazards associated with the Class Products.

21       75.    Defendants know, or should know, of a not insignificant number of reports from

22    afflicted consumers that the Class Products are harming their users and that the Class Labels are

23    inadequate, misleading, and false. Defendant receive information pertaining to injuries associated

24    with use of the Class Products through call-in lines, website reviews, consumer complaints generally,

25    and have received and compiled these complaints from the United States and other parts of the world

26    where Defendants sell the Class Products.

27

28

FIRST AMENDED CLASS ACTION COMPLAINT                 Case No. 20STCV15638

76.     Defendants' claims that the Class Products are "ophthalmologist tested," "dermatologist tested," and "allergy tested" and that the Class Products are "safe," "gentle," and "effective" are misleading and/or untrue. Such claims cause consumers to believe that the Class Products have been tested by specialists for allergens and that those specialists have concluded, without qualification, that the class products are safe, for all, to use "even around the sensitive eye area, even for contact lens wearers." Clearly, these claims are misleading as they tend to obscure any inference that the Class Products are anything but safe. Defendants knew, or reasonably should have known, that these claims were untrue or misleading.

77.     Defendants' conduct is ongoing and continuing and the threat of imminent harm to uninformed consumers is substantial, such that prospective injunctive relief is necessary. Such injunctive relief is necessary to prevent consumers who rely on the Class Product labels from being harmed by unanticipated adverse skin reactions. Injunctive relief would prevent future harm by requiring Defendants to disclose known hazards and admonishing consumers to conduct a preliminary skin test to determine the Class Product's suitability for their particular skin. Further, Plaintiff and putative class members desire to purchase the Class Products in the future if the products could be made to conform with the representations of the Class Product labels.

78.     Plaintiff and members of the Class are entitled to injunctive and equitable relief, and restitution in the amount they spent on the Class Products.

### THIRD CAUSE OF ACTION
### VIOLATION OF THE UNLAWFUL PRONG OF CALIFORNIA'S UNFAIR COMPETITION LAW
### (CAL. BUS. & PRO. CODE §§ 17200, *et seq.*)

79.     Plaintiffs restate and reallege, and incorporate herein by reference, the preceding paragraphs as if fully set forth herein and further alleges as follows:

80.     Plaintiffs bring this cause of action on behalf of themselves and all similarly situated consumers of the Nationwide Class, the California Subclass, the New Jersey Subclass, the Florida Subclass for violations of the unlawful prong of California's Unfair Competition Law ("UCL").

///

81.     Defendants have violated and continue to violate California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq., which prohibits unlawful, unfair, or fraudulent business acts or practices.

82.     Defendants' acts or practices, as alleged in this complaint, constitute unlawful, unfair, and fraudulent business practices, in violation of the Unfair Competition Law.  In connection with the sale of the Class Products to Plaintiff and the Class Members, Defendants failed to disclose, on the Class Product labels or otherwise, material information about the Class Products. Defendants failed to disclose, and/or concealed, that the chemicals and/or formulations used in the Class Products pose a safety hazard to a substantial number of consumers.

83.     Defendants' knew their Neutrogena Cleansing Towelette products would harm potential and actual consumers, did not meet consumer expectations regarding the anticipated risks associated with using makeup remover products, and lacked the necessary disclosures to allow consumers to make reasonably informed decisions about whether to purchase or use the Class Products.

84.     Defendants made unambiguous representations to consumers to ensure them that the Class Products are safe for even the most sensitive skin while suppressing some material facts regarding the severity and frequency of the adverse skin reactions caused by the Class Products.

85.     Defendants' practice of marketing the Class Products as being of a particular standard and quality, and omitting material information regarding the defective nature of the formula used in the Class Products is prohibited by Cal. Civ. Code §§ 1770(a)(5), (7), (9), and (16), and is therefore an "unlawful" business practice in violation of the UCL.

86.     Defendants' deceptive business acts and practices regarding the sale of the Class Products and/or omissions regarding the propensity of the formula used in the Class Products to harm consumers violate Cal. Bus. & Prof. Code §§ 17500, et seq., and are therefore "unlawful" business practices.

87.     Defendants' deceptive business acts and practices regarding the sale of the Class Products and/or omissions regarding the propensity of the formula used in the Class Products to harm

1    consumers violate the New York General Business Law, and are therefore "unlawful" business
2    practices.

3        88.    Defendants' deceptive business acts and practices regarding the sale of the Class
4    Products and/or omissions regarding the propensity of the formula used in the Class Products to harm
5    consumers violate New Jersey Consumer Fraud Act and are therefore "unlawful" business practices.

6        89.    Defendants' deceptive business acts and practices regarding the sale of the Class
7    Products and/or omissions regarding the propensity of the formula used in the Class Products to harm
8    consumers violate Florida's Deceptive and Unfair Business Practices Act and are therefore
9    "unlawful" business practices.

10       90.    Defendants failure to affix a warning to the Class Product labels is a violation of 21
11   CFR § 701.1 and is therefor an unlawful business practice.

12       91.    These deceptive business acts and practices, including the misleading materials,
13   advertisements and other inducements were directed at consumers in the State of California, and
14   nationwide, by Defendants.

15       92.    As a direct and proximate result of Defendants' "unlawful" business practices as
16   alleged herein, Plaintiff and each Class member have been wrongfully deprived of money and/or
17   property. Plaintiff and each Class member suffered an injury-in-fact as a result of Defendants'
18   misleading and deceptive advertising, and omissions of material facts regarding the propensity of the
19   formula used in the Class Products to harm consumers. Had Defendants not falsely represented the
20   Class Products as being of a particular standard and quality that they in fact were not, Plaintiff and
21   members of the Class would not have purchased the Class Products, or they would have paid
22   significantly less.

23       93.    As a direct and proximate result of Defendants' unfair and deceptive practices,
24   Plaintiff and putative Class Members have suffered and will continue to suffer actual damages.

25       94.    Accordingly, Defendants received and are in possession of excessive and unjust
26   revenues and profits, and/or have caused Plaintiff and other Class members to lose money or property
27   directly as a result of Defendants' wrongful acts and practices.

28

95.     As a result of the above unlawful acts and practices of Defendants, Plaintiffs, on behalf of themselves and all others similarly situated, and as appropriate, on behalf of the general public of the state of California, seeks injunctive relief prohibiting Defendant from continuing these wrongful practices and ordering Defendant to disclose all material information concerning the Class Products to past and prospective consumers, and such other equitable relief, including restitution of either (1) the full purchase paid by customers who purchased Class Products, or (2) a portion of the purchase price paid by customers who purchased Class Products reflecting the difference in value between what Defendant represented to consumers and the product that Defendant actually delivered to consumers, to the fullest extent permitted by law.

## FOURTH CAUSE OF ACTION
### VIOLATION OF THE UNFAIR PRONG OF CALIFORNIA'S UNFAIR COMPETITION LAW
### (CAL. BUS & PRO. CODE §§ 17200, *et seq.*)

96.     Plaintiffs restate and reallege, and incorporate herein by reference, the preceding paragraphs as if fully set forth herein and further alleges as follows:

97.     Plaintiffs bring this cause of action on behalf of themselves and all similarly situated consumers of the Nationwide Class, the California Subclass, the New Jersey Subclass, the Florida Subclass for violations of the unfair prong of California's Unfair Competition Law ("UCL").

98.     Defendants have violated and continue to violate California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq., which prohibits acts of "unfair competition," including any "unlawful… business act[s] or practice[s]."

99.     Plaintiff and the Class members reasonably expected the product formula to be of a certain quality and standard, and that the Class Products would not create a sudden and severe skin reaction, given that they are marketed and priced as a safe and trusted product. This is the reasonable and objective consumer expectation for makeup remover advertised as Defendant advertised the Class Products.

100.    Defendants knew that the Class Products were inherently dangerous and had a propensity to cause sudden and severe adverse skin reactions. Defendants made unambiguous

1  representations as to the safety of the Class Products while suppressing some material facts regarding

2  the severity and frequency of the skin reactions caused by the Class Products.

3      101.   By failing to disclose the defective nature of the Cleansing Towelettes, Defendants

4  have knowingly and intentionally concealed material facts and breached its duty not to do so.

5      102.   Defendants' unfair and deceptive acts or practices occurred repeatedly in Defendants'

6  trade or business and were capable of deceiving a substantial portion of the purchasing public.

7      103.   Defendants' marketing practices and omission of material facts regarding the inferior

8  quality and propensity of their Cleansing Towelettes to harm is immoral, unethical, oppressive,

9  unscrupulous, and substantially injurious to consumers.

10     104.   Plaintiff and Class members who purchased the Class Products had no way of

11 reasonably knowing that the Cleansing Towelettes were defective and posed safety risks due to

12 Defendants' deceptive marketing, advertising, and/or omission of material information.   Thus,

13 Plaintiff and Class members could not have reasonably avoided the injury they suffered.

14     105.   The gravity of harm to Plaintiff and the Class greatly outweighs any countervailing

15 benefits to Defendants or to competition.

16     106.   Defendants' actions alleged herein violate the laws and public policies of California,

17 as set out throughout this Complaint.

18     107.   As a direct and proximate result of Defendants' "unfair" business practices as alleged

19 herein, Plaintiff and each Class member have been wrongfully deprived of money and/or property.

20 Plaintiff and each Class member suffered injury-in-fact as a result of Defendants' misleading and

21 deceptive advertising, and omissions of material facts regarding the inferior quality and defective

22 nature of the Class Products.  Had Defendants not falsely represented their Cleansing Towelettes as

23 being of a particular standard and quality that they were in fact not, Plaintiff and members of the

24 Class would not have purchased the Class Products, or they would have paid significantly less.

25     108.   Accordingly, Defendants received and are in possession of excessive and unjust

26 revenues and profits, and/or have caused Plaintiff and other Class members to lose money or property

27 (by overpaying) directly as a result of Defendants' wrongful acts and practices.

28

109.    As a result of the above unfair acts and practices of Defendants, Plaintiffs, on behalf of themselves and all others similarly situated, and as appropriate, on behalf of the general public of the state of California, seeks injunctive relief prohibiting Defendant from continuing these wrongful practices and ordering Defendant to disclose all material information concerning the Class Products to past and prospective consumers, and such other equitable relief, including restitution of either (1) the full purchase paid by customers who purchased Class Products, or (2) a portion of the purchase price paid by customers who purchased Class Products reflecting the difference in value between what Defendant represented to consumers and the product that Defendant actually delivered to consumers, to the fullest extent permitted by law.

## FIFTH CAUSE OF ACTION
### VIOLATION OF THE FRAUDULENT PRONG OF CALIFORNIA'S UNFAIR COMPETITION LAW
### (CAL. BUS. & PRO. CODE §§ 17200, *et seq.*)

110.    Plaintiffs restate and reallege, and incorporate herein by reference, the preceding paragraphs as if fully set forth herein and further alleges as follows:

111.    Plaintiffs bring this cause of action on behalf of themselves and all similarly situated consumers of the Nationwide Class, the California Subclass, the New Jersey Subclass, the Florida Subclass for violations of the fraudulent prong of California's Unfair Competition Law ("UCL").

112.    California Business and Professions Code § 17200, et seq. prohibits acts of unfair competition which includes "fraudulent business act[s] or practice[s]."

113.    As more fully described above, Defendants misrepresented the standard, quality and performance capability of the formulas used in the Class Products.

114.    Defendants' misleading marketing and advertising practices, including omission of material facts regarding the propensity of the Class Products to harm consumers, are likely to, and do, deceive reasonable consumers. Indeed, Plaintiff and other members of the Nationwide Class and state Subclasses relied on Defendants' marketing and were deceived about the quality, safety, and characteristics of the Class Products as a result of that reliance. Defendants' marketing and advertising failed to disclose to consumers that the Cleansing Towelettes had a propensity to create

1    sudden and severe skin reactions when used as directed, an unanticipated resulting in a great safety

2    hazard to the consumer. Said acts/omissions are therefore fraudulent business practices.

3        115.    Defendants' misleading and deceptive practices caused, and were intended to cause,

4    Plaintiff and other Class members to purchase the Class Products, which had, and have, a propensity

5    to harm the consumer when the Class Products are used as directed.

6        116.    Defendants made unambiguous representations as to the safety of the product while

7    suppressing material facts regarding the severity and frequency of the skin reactions caused by the

8    Class Products.

9        117.    Plaintiffs and other class members were harmed and suffered injury as a result of

10   Defendants' violations of the Cal. Bus. & Prof. Code §§ 17200, *et. seq*. Defendants have been

11   unjustly enriched at the expense of Plaintiff and the members of the Class. Had Defendants not

12   falsely represented their Cleansing Towelettes as being of a certain standard and quality that they

13   were in fact not, Plaintiff and members of the Class would not have purchased the Class Products,

14   or they would have paid significantly less.

15       118.    Accordingly, a result of the above unfair acts and practices of Defendants, Plaintiffs,

16   on behalf of themselves and all others similarly situated, and as appropriate, on behalf of the general

17   public of the state of California, seeks injunctive relief prohibiting Defendant from continuing these

18   wrongful practices and ordering Defendant to disclose all material information concerning the Class

19   Products to consumers, and such other equitable relief, including restitution of either (1) the full

20   purchase paid by customers who purchased Class Products, or (2) a portion of the purchase price

21   paid by customers who purchased Class Products reflecting the difference in value between what

22   Defendant represented to consumers and the product that Defendant actually delivered to consumers,

23   to the fullest extent permitted by law. Omitting material facts regarding the inferior quality, and

24   potential hazards, of the Class Products is deceptive and unconscionable and purchasers of the Class

25   Products are entitled to restitution and all other relief afforded by law.

26   / / /

27   / / /

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SIXTH CAUSE OF ACTION
### VIOLATION OF NEW JERSEY'S CONSUMER FRAUD ACT
### (N.J. STAT. ANN. § 56:8-1, *et seq.*)

119.    Plaintiffs restate and reallege, and incorporate herein by reference, the preceding paragraphs as if fully set forth herein and further alleges as follows:

120.    Plaintiff Mileszko brings this cause of action on behalf of herself and all similarly situated residents of the state of New Jersey for violations of New Jersey's Consumer Fraud Act.

121.    Defendants and Plaintiff are "persons" within the meaning of N.J. Stat. Ann. § 56:8-1(d). 1179. Defendants engaged in "sales" of "merchandise" within the meaning of N.J. Stat. Ann. § 56:8-1(c), (d). 1180.

122.    The New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, et seq. ("N.J. CFA"), makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentations, or the knowing concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby." N.J. Stat. Ann. § 56:8-2. Defendants engaged in unconscionable commercial practice or deceptive acts or practices that violated the New Jersey CFA as described above, and below, and did so with the intent that Plaintiff rely upon their acts of concealment, suppression, and/or omission.

123.    Defendants' deceptive acts and practices, and/or misrepresentations and omissions, have deceived Plaintiffs, and those same business practices have deceived or are likely to deceive members of the consuming public and the other members of the Nationwide Class and state Subclasses.

124.    Defendants' actions impact the public interest because Plaintiffs and the members of the Class have been injured in exactly the same way as millions of other consumers by Defendants' deceptive acts and practices as described herein

125.    Defendants' conduct proximately caused injuries to Plaintiff and the other New Jersey Subclass members.

FIRST AMENDED CLASS ACTION COMPLAINT                    Case No. 20STCV15638

28

1    126.    Defendants intentionally, affirmatively, and knowingly misrepresented material facts

2    regarding the Class Products with intent to mislead Plaintiff and the New Jersey Subclass.

3    127.    Defendants knew or should have known that its conduct violated the New Jersey

4    CFA.

5    128.    Plaintiff and the other New Jersey Subclass members were injured and suffered

6    ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendants' conduct

7    in that Plaintiff and the other New Jersey Subclass members overpaid for their Class Products and

8    did not receive the benefit of their bargain. These injuries are the direct and natural consequence of

9    Defendants' misrepresentations, fraud, deceptive practices, and omissions.

10    129.    Defendants' violations present a continuing risk to Plaintiff as well as to the general

11    public. Defendants' unlawful acts and practices complained of herein affect the public interest.

12    130.    Pursuant to N.J. Stat. Ann. § 56:8-19, Plaintiff and the New Jersey Class members

13    seek an order enjoining Defendants' unlawful conduct, actual damages, treble damages, attorneys'

14    fees, costs, and any other just and proper relief available under the New Jersey CPA.

15    **SEVENTH CAUSE OF ACTION**
**VIOLATION OF NEW YORK'S GENERAL BUSINESS LAW**
16    **(N.Y. GEN. BUS. LAW §§ 349, *et seq.*)**

17    131.    Plaintiffs restate and reallege, and incorporate herein by reference, the preceding

18    paragraphs as if fully set forth herein and further alleges as follows:

19    132.    Plaintiff Luka brings this cause of action on behalf of herself and all similarly situated

20    residents of the state of New York for violations of New York General Business Law § 349 ("GBL

21    § 349").

22    133.    GBL § 349(h) provides that "any person who has been injured by reason of any

23    violation of this section may bring . . . an action to recover h[er] actual damages or fifty dollars,

24    whichever is greater."

25    134.    GBL § 349(h) further provides that "[t]he court may, in its discretion, increase the

26    award of damages to an amount not to exceed three times the actual damages up to one thousand

27

28

1   dollars, if the court finds the defendant willfully or knowingly violated this section," and that "[t]he

2   court may award reasonable attorney's fees to a prevailing Plaintiffs."

3       135.   Defendants' design, testing, manufacture, distribution, marketing, advertising,

4   labeling, and sale of the Class Products constitutes "business, trade or commerce" under GBL §

5   349(a).

6       136.   Defendants' conduct violates GBL § 349 because Defendants engaged in the deceptive

7   acts and practices described above.

8       137.   Defendants' deceptive conduct and its false and misleading labeling and statements

9   regarding the Class Products' safety and efficacy for all consumers and omissions regarding the

10  propensity of the Class Products to harm, are facts that a reasonable person would have considered

11  material in deciding whether or not to purchase, or how much they were willing to pay to purchase,

12  the Class Products.

13      138.   Defendants' acts and practices described above were likely to mislead a reasonable

14  consumer acting reasonably under the circumstances, including Plaintiffs and members of the Class.

15      139.   Plaintiffs and the other Class members justifiably acted or relied to their detriment

16  upon Defendants' misrepresentations and omissions of fact, as evidenced by Plaintiffs and the other

17  Class members' purchasing of Class Products.

18      140.   Defendants' materially misleading statements and deceptive acts and practices were

19  directed at the public at large, including Plaintiffs and members of the New York Subclass.

20      141.   Had Defendants disclosed all material information regarding the Class Products to

21  Plaintiffs and the other New York Subclass members, Plaintiffs and the other Class members would

22  not have purchased the Class Products or would have paid less to do so.

23      142.   Defendants' deceptive acts and practices, and/or misrepresentations and omissions,

24  have deceived Plaintiffs, and those same business practices have deceived or are likely to deceive

25  members of the consuming public and the other members of the Nationwide Class and state

26  Subclasses.

27  ///

28

1      143.   Defendants' actions impact the public interest because Plaintiffs and the members of

2  the Class have been injured in exactly the same way as millions of other consumers by Defendants'

3  deceptive acts and practices as described herein.

4      144.   As a direct and proximate result of Defendants' deceptive trade practices, Plaintiffs

5  and the other Class members have suffered ascertainable loss and actual damages. Plaintiffs and the

6  other Class members would not have purchased the Class Products or would have paid less for them

7  had Defendants disclosed the truth about the dangers associated with the Class Products.

8      145.   Defendants' violation of GBL § 349 was willful and knowing. Defendants knowingly

9  and willfully marketed the Class Products as safe and gentle all the while knowing they were not.

10  Defendants, through their willful and knowing deceptive acts and practices, as detailed above, have

11  willfully and knowingly exposed Plaintiffs and the Class to the risk of serious injury, and continue

12  to do so by virtue of having mislabeled Class Products despite possessing information that

13  controverts the Class Product labels.

14      146.   As a direct and proximate result of Defendants' conduct in violation of GBL § 349,

15  Plaintiffs and the members of the Class have been injured in an amount to be proven at trial, with a

16  statutory minimum of fifty dollars per Class member. Because Defendants' violation was knowing

17  and willful, Plaintiffs is entitled to treble damages under GBL § 349(h).

18      147.   Plaintiffs also seek injunctive relief, including requiring Neutrogena to engage in a

19  notice program to notify purchasers of the Class Products of the potential for adverse skin reactions,

20  to stop using the Class Products if they suffer an adverse reaction and to instruct future and current

21  users to conduct a skin patch test before use of the Class Products on sensitive areas like the face.

22  Or, alternatively, to have Neutrogena conform the contents of the Class Products to the current

23  product labeling.

24      148.   Additionally, pursuant to GBL § 349, Plaintiffs and the Class seek attorneys' fees and

25  costs.

26  ///

27  ///

28

**EIGHTH CAUSE OF ACTION**
**VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**
**(FL. STAT. § 501.201, *et seq.*)**

149.    Plaintiffs restate and reallege, and incorporate herein by reference, the preceding paragraphs as if fully set forth herein and further alleges as follows:

150.    Plaintiff Gonzalez brings this cause of action on behalf of herself and all other similarly situated residents of the state of Florida for violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

151.    The FDUTPA prohibits unfair methods of competition, unconscionable acts or practices, and unfair acts or practices in the conduct of any trade or commerce.

152.    Defendants, at all times relevant hereto, solicited, advertised, promoted, offered, and distributed the Class Products in the State of Florida and were thus engaged in trade or commerce as defined by Fl. Stat. § 501.203(8).

153.    Plaintiff Rebeca Gonzalez, all other similarly situated, and members of the Florida Class were, at all times relevant hereto, consumers under Fl. Stat. § 501.203(7) and are each entitled to the relief afforded by FDUTPA.

154.    Defendants' labeling and marketing of the Class Products as "gentle," "effective," "Gentle enough for use around the sensitive eye area, even for contact lens wearers," and that the Class Products are "ophthalmologist tested, dermatologist tested, and allergy tested is misleading and/or false and omits material information upon which a reasonable consumer would rely when deciding whether to purchase the Class Products. The misleading affirmative representations and material omissions of the Class Product labels and marketing are deceptive acts under FDUTPA.

155.    As more fully set forth throughout this Complaint, Defendants' labeling and marketing of the Class Products is false, deceptive, and misleading because material information, i.e., the propensity of the Class Products to elicit an adverse skin reaction, or likelihood of an adverse skin reaction, is omitted and concealed from consumers despite Neutrogena's knowledge of adverse skin reactions amongst users of the Class Products. Further still, Neutrogena makes affirmative

1  representations as to the products gentleness and appropriateness for sensitive skin which are

2  contrary to its knowledge and understanding of consumer reports and the products generally.

3     156.   Defendants' deceptive acts and practices, and/or misrepresentations and omissions,

4  have deceived Plaintiffs, and those same business practices have deceived or are likely to deceive

5  members of the consuming public and the other members of the Nationwide Class and state

6  Subclasses.

7     157.   Defendants' actions impact the public interest because Plaintiffs and the members of

8  the Class have been injured in exactly the same way as millions of other consumers by Defendants'

9  deceptive acts and practices as described herein.

10    158.   Defendants designed, used, and distributed the false, misleading, and deceptive

11  packaging labels and other representations intending that consumers rely on those statements and

12  omissions when deciding whether to purchase the Class Products in order to increase sales of the

13  Class Products.

14    159.   Defendants' violation of the FDUTPA caused Plaintiff Rebecca Gonzalez, and

15  members of the putative Florida Class to suffer actual damages and ascertainable losses.

16    160.   Pursuant to § 501.211(2), Fl. Stat., Plaintiff is authorized to bring a civil action to

17  recover Plaintiff's actual damages, attorneys' fees and court costs under Fl. Stat. § 501.2105(1)(3),

18  and for injunctive and declaratory relief under Fl. Stat. § 501.211(1)

19

20                          **NINTH CAUSE OF ACTION**
                            **NEGLIGENT OMISSION**

21    161.   Plaintiffs restate and reallege, and incorporate herein by reference, the preceding

22  paragraphs as if fully set forth herein and further alleges as follows:

23    162.   Plaintiffs bring this cause of action on behalf of themselves and all similarly situated

24  consumers of the Nationwide Class, the California Subclass, the New Jersey Subclass, the Florida

25  Subclass for Negligent Omission.

26    162.   Defendants negligently and recklessly omitted and/or misrepresented material facts

27  pertaining to the Class Products' safety and suitability, prospective and potential harm to consumers,

28

1  resulting injuries, and damages to Plaintiffs and members of the putative Nationwide Class and state
2  Subclasses. Such omission or concealment of these material facts subjects Plaintiffs, and the public
3  at large, to resulting harm from the use of Defendants' Neutrogena Cleansing Towelette Products
4  without proper, suitable, adequate, and/or proper warning and/or instruction related to purchasing
5  and using the Class Products by Plaintiff and putative Nationwide Class and state Subclass members.

6      163.   Defendant represented to consumers, via its labeling and packaging, its promotional
7  material, and its branding, that the Class Products were safe to use on even the most sensitive areas
8  of the skin and created the impression in the minds of consumers that the products were "Allergy
9  tested," "Ophthalmologist tested," and "Dermatologist tested," and, as such, would be safe even if it
10  came into contact with sensitive skin or even the eyes.

11      164.   Defendant's representations were untrue as the Class Products have a propensity to
12  cause irritation, peeling, blistering, burning, and other harmful and lasting injuries and are not
13  suitable for sensitive skin or for contact lens wearers.

14      165.   Regardless of whether Defendants honestly believed the representations or not,
15  Defendants have been aware of the propensity for harm resulting from the use of its Class Products,
16  Defendants have known, and currently know, of a significant number of complaints and reports
17  regarding the Cleansing Towelettes when used as directed by Defendants.

18      166.   When making these representations as to the Class Product's safety and when
19  omitting the information regarding the propensity of the products to harm users, Defendants intended
20  that consumers would rely on this information, or lack thereof, when deciding whether to purchase
21  the Class Products.

22      167.   Defendants negligently and recklessly misrepresented or omitted facts pertaining to
23  the sale and benefits to Plaintiff and putative Class members by representing and withholding
24  relevant information that would alert Plaintiff and prospective purchasers to the risk and degree of
25  harm resulting from Plaintiff and putative Class members' purchases and use of Defendants' Class
26  Products.

27  ///

28

168.    Because of the inadequacy of the disclosures and factual information concerning health consequences of using Defendants' Class Products, Defendants knew or should have known that their representations were inadequate, insufficient, and/or untrue.

169.    In reliance on Defendants' misrepresentations and/or omissions of material fact and/or failed disclosure of known health issues, Plaintiff and putative Class members, both directly and indirectly, purchased Defendants' Class Products.

170.    Had Plaintiff and putative Class members, as reasonable persons, known that the Class Products had inadequate disclosures, the degree of danger to health presented, the flawed testing protocol, or that the Class Products were failing to comply with the requirements of law pertaining to the information and disclosure of health and safety risks of said products, Plaintiff and putative Class members would not have purchased Defendants' product as advertised or at the price demanded.

171.    As direct and proximate consequence of Defendants' negligent misrepresentation and/or omissions, Plaintiffs and members of the the Nationwide Class, the California Subclass, the New Jersey Subclass, the New York Subclass, and the Florida Subclass have suffered the injuries, losses, costs, damages, and expenses alleged herein.

## TENTH CAUSE OF ACTION
### UNJUST ENRICHMENT

172.    Plaintiffs restate and reallege, and incorporate herein by reference, the preceding paragraphs as if fully set forth herein and further alleges as follows:

173.    Plaintiffs bring this cause of action on behalf of themselves and all similarly situated consumers of the Nationwide Class, the California Subclass, the New Jersey Subclass, the Florida Subclass for Unjust Enrichment.

174.    Defendants have benefitted from selling, at an unjust profit, mislabeled and dangerous Class Products that had artificially inflated prices due to Defendants' concealment of the potential for serious injury when consumers use the Class Products as directed by Defendants and Plaintiffs

FIRST AMENDED CLASS ACTION COMPLAINT

35

Case No. 20STCV15638

1   and the other members of the Nationwide Class and state Subclasses have overpaid for the Class

2   Products.

3       175.   Defendants have received and retained unjust benefits from Plaintiffs and the other

4   members of the Nationwide Class and state Subclasses, and inequity has resulted.

5       176.   It is inequitable and unconscionable for Defendants to retain these benefits.

6       177.   Because Defendants concealed their misrepresentations, fraud, and deception,

7   Plaintiffs and the other members of the Nationwide Class and state Subclasses were not aware of the

8   true facts concerning the Class Products and did not benefit from Defendants' misconduct.

9       178.   Defendants knowingly accepted the unjust benefits of its wrongful conduct.

10      179.   As a result of Defendants' misconduct, the amount of its unjust enrichment should be

11  disgorged and returned to Plaintiffs and the other members of the Nationwide Class and state

12  Subclasses in an amount to be proven at trial.

13      WHEREFORE, Plaintiffs and the putative Nationwide Class and state Subclasses members

14  pray for Judgment in their favor and against Defendant; for actual and compensatory damages; for

15  punitive or exemplary damages; for costs, expenses, and attorney fees as allowed by law; for

16  injunctive relief; and for such other and further relief as this Court deems just and proper.

17                  **VII.   PRAYER FOR RELIEF**

18      WHEREFORE, Plaintiffs and the Nationwide Class and state Subclasses pray for relief and

19  judgment as follows:

20      A.   For an order declaring that this action is properly maintained as a class action and

21  appointing Plaintiffs as representatives for the Nationwide Class and state Subclasses, and appointing

22  Plaintiffs' counsel as Class counsel;

23      B.   That Defendants bear the costs of any notice sent to the Class;

24      C.   For an order awarding Plaintiffs and the members of the Nationwide Class and state

25  Subclasses actual damages, punitive and exemplary damages, restitution, and/or disgorgement, to

26  the extent allowed under the law;

27      D.   For an order enjoining Defendants from continuing to engage in the unlawful and

28

FIRST AMENDED CLASS ACTION COMPLAINT                     Case No. 20STCV15638

1     unfair business acts and practices as alleged herein;

2          E.      For an order awarding Plaintiffs and the members of the Nationwide Class and state

3     Subclasses pre- and post-judgment interest;

4          F.      For an order awarding attorneys' fees and costs of suit, including expert witnesses'

5     fees as permitted by law; and

6          G.      Such other and further relief as this Court may deem just and proper.

7                              **JURY TRIAL DEMAND**

8     Plaintiffs and the putative Nationwide Class and state Subclasses members demand a trial by

9     jury for all of the claims asserted in this Complaint so triable.

10

11     Dated: June 19, 2020               Respectfully submitted,

12

13                            FINKELSTEIN & KRINSK LLP

14

15                            By:

16                                   John J. Nelson
                                  Attorneys for Plaintiff

17

18

19

20

21

22

23

24

25

26

27

28

06/26/2020

**EXHIBIT A**

06/26/2020

# EXHIBIT A

## AFFIDAVIT OF VENUE

I, Jaimie Potts, declare that:

 1.     I have personal knowledge of the facts cited in this declaration and if called as a witness I would competently testify thereto.

 2.     I am a named plaintiff in this case.

 3.     I purchased Neutrogena brand Makeup Remover Cleansing Towelettes, which are the subject of this case, in Los Angeles County, California as described in paragraph 12 of the complaint.

 I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing declaration is true and correct, and was executed by me in the City of Glendora, Los Angeles County, California on April 13th, 2020.

                              By: _____
                                   Jaimie Potts
                                   Declarant

- 1 -

AFFIDAVIT OF VENUE